**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| NORTHEASTERN MINNESOTANS FOR WILDERNESS and THE WILDERNESS SOCIETY,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT, U.S. DEPARTMENT OF AGRICULTURE, and U.S. FOREST SERVICE,<br><br>Defendants. | ) | Case No. 26-cv-4579 |

**<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

**INTRODUCTION**

1. Plaintiffs Northeastern Minnesotans for Wilderness and The Wilderness Society file this suit for declaratory and injunctive relief against the United States Department of the Interior ("Interior"), Bureau of Land Management ("BLM"), United States Department of Agriculture ("USDA"), and United States Forest Service ("Forest Service") for improperly withholding agency records requested under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*.

2. Plaintiffs submitted FOIA requests for certain records from agencies and offices within Interior and USDA, including Interior's Secretary's Office, BLM Headquarters, BLM's Eastern States State Office, USDA Office of Information Affairs, Forest Service Region 9, and Forest Service Headquarters. These records concern the advancement of mineral leasing and mineral development in the Superior National Forest that would adversely affect the Boundary Waters Canoe Area Wilderness ("Boundary Waters").

3. The Boundary Waters is located in the northern part of the Superior National Forest in Minnesota. It is renowned for its healthy forests, extremely high water quality, and networks of pristine lakes, streams, wetlands, and canoe routes. It is also home to abundant fisheries, migratory birds, and wildlife, including the endangered northern long-eared bat and the threatened gray wolf and Canada lynx. Water from the Rainy River-Headwaters watershed flows into the Boundary Waters.

4. Sulfide-ore copper mining, the specific type of hardrock mining that has been proposed here, has a consistent record of devastating environmental harms—including decades to centuries of water contamination, degradation of public lands and wildlife habitat, and all too often the catastrophic spillage of toxic materials. Sulfate, one of the most ubiquitous mining pollutants in northern Minnesota, has been demonstrated to increase the formation of methyl-mercury, a neurotoxin that bioaccumulates in sportfish. Mining within the Rainy River-Headwaters watershed threatens to pollute the clean water that flows into the Boundary Waters, increase mercury in sportfish and the people who catch and eat fish, and damage the lake-land ecosystem of the Boundary Waters in many other ways.

5. The Forest Service conducted an environmental review that identified these and other risks of proposed hardrock mineral exploration, leasing, and development in the Rainy River-Headwaters watershed. Consequently, in 2023 the Secretary of the Interior withdrew land in the Superior National Forest from disposition under United States mineral and geothermal leasing laws for a 20-year period, subject to valid existing rights. This withdrawal was made pursuant to the Federal Land Policy and Management Act and implemented by publishing a Public Land Order in the Federal Register.

6. Three years later in January 2026—and in a complete reversal of policy and longstanding precedent—the Deputy Secretary of the Interior submitted the Public Land Order to Congress under the pretense that it was an agency "rule" potentially subject to disapproval under the Congressional Review Act, 5 U.S.C. § 801 *et seq*. This unlawful submittal resulted in Congress passing a resolution disapproving the Public Land Order. H.R.J. Res. 140, 119th Cong. (2026). This legislation purported to reopen Rainy River-Headwaters watershed lands to mineral development managed by BLM.

7. Following the congressional action, in April and May 2026, Plaintiffs submitted FOIA requests to agencies and offices within the Interior and USDA to uncover actions and communications by the agencies to advance mineral leasing and mining projects on federal land in the Superior National Forest.

8. The USDA Office of Information Affairs, Forest Service Headquarters, and Forest Service Region 9 have not issued Final Determinations, and the Interior Secretary's Office estimated that its Final Determination will not be issued until February 2027. These agencies have thus failed to meet the statutory deadline of 20 workdays to respond to Plaintiffs' requests.

9. Two Interior offices, BLM Headquarters and Eastern States State Office, responded to Plaintiffs' FOIA requests in an incomplete and haphazard manner, without conducting reasonable searches for responsive records or including statutorily required information. Both offices closed Plaintiffs' FOIA requests without disclosing any responsive records. Plaintiffs submitted timely administrative appeals to Interior's FOIA Office, but to date, the appeals have not been responded to or acknowledged and the statutory timeframe to do so has passed.

10. These actions are clear violations of FOIA, which was designed to give the public broad and timely access to records concerning government activities, such as those directly involving the country's public lands, subject only to limited statutory exemptions from disclosure.

11. Timely disclosure of all non-exempt records and portions of records requested in these FOIA requests is of vital importance to inform Plaintiffs and the public. The surface waters in the Superior National Forest, of which the Boundary Waters is a substantial part, contain twenty percent of the fresh water in the entire National Forest System, and the area supports substantial recreational tourism and local businesses that draw hundreds of thousands of visitors annually. Plaintiffs, whose members are among the many who use and rely on these public lands, seek timely disclosure of records concerning any potential efforts by the federal government to advance mining projects in the Superior National Forest, including communications with external parties.

12. Plaintiffs properly request judicial review, oversight, and relief to ensure prompt access to all non-exempt agency records or portions of records that are responsive to their requests for information.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

14. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

### I. PLAINTIFFS

15. Plaintiff NORTHEASTERN MINNESOTANS FOR WILDERNESS ("NMW") is one of the FOIA requesters in this matter.

16. NMW is a non-profit, tax-exempt, charitable corporation organized under the laws of Minnesota. Formed in 1996 and based in Ely, its mission is to protect and preserve the wilderness and wild places of Minnesota's Arrowhead region; to advocate for the protection of the Boundary Waters and Voyageurs National Park and the enhancement of their wilderness aspects; and to foster education about the value of wilderness. NMW was formed to continue the local tradition of working to protect wild places, particularly the Boundary Waters, against increasing commercial pressures, so that natural features and processes remain intact for future generations.

17. NMW has more than 259,500 supporters across all fifty states, including more than 87,000 with whom the organization communicates on a weekly basis. NMW's supporters rely on and benefit from the natural resources in the Superior National Forest—especially the waters, lands, plant communities, and wildlife in the Boundary Waters—and Voyageurs National Park. These supporters have a longstanding interest in lynx, moose, wolf, and forest conservation, both in the Boundary Waters and across the Superior National Forest. They regularly visit and recreate in the area, and will continue to do so in the near future.

18. NMW provides information to its supporters and the public in a variety of formats, including newsletters, web publications, social media communications, and public presentations. NMW's publications provide information not only to its supporters but to the members of many other conservation organizations, locally as well as nationally, with an interest in the Boundary Waters.

19. NMW is also the founder and lead organization of the Campaign to Save the Boundary Waters, which includes 437 businesses, conservation organizations, and hunting and

fishing organizations. NMW frequently shares with these partners any news and information of importance for the management and future of the Boundary Waters' watershed and wilderness.

20. NMW uses FOIA as an important tool for gaining information about agency activities related to the Superior National Forest, including the Boundary Waters. NMW plays a critical role in protecting the Boundary Waters' watershed by educating the public, partner organizations of the Campaign to Save the Boundary Waters, and the citizen-supporters of those partner organizations. Access to government documents, disclosure forms, and similar materials through FOIA requests is essential to this role, so NMW and its supporters have been injured by the agencies' failure to provide the requested records within the timeframe mandated by FOIA. The requested relief will redress these injuries.

21. Plaintiff THE WILDERNESS SOCIETY ("TWS") is one of the FOIA requesters in this matter.

22. Founded in 1935, TWS is a national, non-profit membership organization headquartered in Washington, D.C., devoted to protecting wilderness and inspiring Americans to care for wild places. It has led efforts to permanently protect 112 million acres of wilderness and ensure sound management of our shared national lands.

23. TWS has more than a million members, supporters, and followers, including over 2,600 members and 7,200 supporters in Minnesota, and has long worked to protect the Boundary Waters. As a member of the Campaign to Save the Boundary Waters, TWS has advocated for permanent protection of the Boundary Waters' watershed from the threat of sulfide-ore copper mining and has worked to inform the public about threats to this area. Members and staff of TWS regularly visit the Boundary Waters and surrounding Superior National Forest lands to

paddle, hunt, fish, harvest wild rice, and enjoy the splendor of the areas' pristine lakes, rivers, and forests.

24. TWS uses FOIA to request information that has not yet been made available to the public and thus would increase the level of public understanding about the protection of wild places. TWS disseminates this information to the public, including its supporters. It employs a communications staff of approximately twenty people whose roles include disseminating analysis of information provided by federal land management agencies through various avenues, including to traditional news organizations. Educating the American public about public lands is part of its core mission to "inspire Americans to care for our wild places." TWS brings this action on behalf of itself and its members, both of whom have been injured by the agencies' failure to provide requested records within the timeframe mandated by FOIA. The requested relief will redress these injuries.

## II. DEFENDANTS

25. Defendant U.S. DEPARTMENT OF THE INTERIOR ("Interior") is an agency of the United States government as defined by 5 U.S.C. § 552(f)(1). FOIA charges Interior with the duty to provide public access to non-exempt agency records and portions of records in its possession or control. Upon information and belief, Interior possesses records responsive to Plaintiffs' FOIA request in its Office of the Secretary. Through its actions, and failures to act, Interior has denied Plaintiffs' requests to promptly access agency records, in contravention of federal law.

26. Defendant U.S. BUREAU OF LAND MANAGEMENT ("BLM") is an agency of the United States government as defined by 5 U.S.C. § 552(f)(1). FOIA charges BLM with the duty to provide public access to non-exempt agency records and portions of records in its possession or control. Upon information and belief, BLM possesses records responsive to

Plaintiffs' FOIA requests in its Headquarters and Eastern States State Office. Through its actions, and failures to act, BLM has denied Plaintiffs' requests to promptly access agency records, in contravention of federal law.

27. Defendant U.S. DEPARTMENT OF AGRICULTURE ("USDA") is an agency of the United States government as defined by 5 U.S.C. § 552(f)(1). FOIA charges USDA with the duty to provide public access to non-exempt agency records and portions of records in its possession or control. Upon information and belief, USDA possesses records responsive to Plaintiffs' FOIA request in its Office of Information Affairs. Through its actions, and failures to act, USDA has denied Plaintiffs' requests to promptly access agency records, in contravention of federal law.

28. Defendant U.S. FOREST SERVICE ("Forest Service") is an agency of the United States government as defined by 5 U.S.C. § 552(f)(1). FOIA charges the Forest Service with the duty to provide public access to non-exempt agency records and portions of records in its possession or control. Upon information and belief, the Forest Service possesses records responsive to Plaintiffs' FOIA requests in its Headquarters and Region 9 offices. Through its actions, and failures to act, the Forest Service has denied Plaintiffs' requests to promptly access agency records, in contravention of federal law.

## LEGAL BACKGROUND

29. FOIA's fundamental purpose is to ensure governmental transparency, which is achieved by establishing the public's right to access federal agency records and by imposing specific procedures with clear deadlines. 5 U.S.C. § 552(a)(3)(A), (a)(6)(A).

30. Upon receipt of a request, FOIA requires agencies to issue a "determination" within 20 workdays, absent unusual circumstances, and to make requested records "promptly available" thereafter. *Id.* § 552(a)(3)(A), (a)(6)(A)(i), (a)(6)(B). A determination under FOIA

must notify the requester of the reasons for the determination; the right to seek assistance from the FOIA Public Liaison of the agency; and in the case of an adverse determination, the right to appeal and seek dispute resolution services. *Id.* § 552(a)(6)(A)(i); *see also* 43 C.F.R. § 2.24; 7 C.F.R. § 1.5(g).

31. To reach a determination, FOIA requires federal agencies to conduct a search reasonably calculated to uncover the responsive agency records. 5 U.S.C. § 552(a)(3)(C)–(D).

32. The agency bears the burden of proving that it conducted such a search. *See Nielsen v. U.S. Bureau of Land Mgmt.*, 252 F.R.D. 499, 512 (D. Minn. 2008) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). If a search is conducted, FOIA regulations require agencies to notify requesters of the results. 5 U.S.C. § 552(a)(6)(A); 43 C.F.R. § 2.21; 7 C.F.R. § 1.5.

33. A requester is entitled to a waiver of fees associated with responding to a request when the information sought "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 43 C.F.R. § 2.45; 7 C.F.R. § 1.12(p). Further, an agency cannot assess fees if it does not respond to the request within the time established by FOIA. *See* 5 U.S.C. § 552(a)(4)(A)(viii).

34. The agency bears the burden of proving that withholding responsive records was proper. *Id.* § 552(a)(4)(B).

35. Failure to provide the requester with a timely determination in response to a FOIA request and appeal is a violation of FOIA. *Id.* § 552(a)(6)(A).

36. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits of FOIA. *Id.* § 552(a)(6)(C)(i).

## FACTUAL ALLEGATIONS

37. On April 24, 2026, Plaintiffs submitted FOIA requests to Interior's Office of the Secretary, BLM Headquarters, and BLM's Eastern States State Office. On April 27, 2026, Plaintiffs submitted FOIA requests to the Forest Service's Headquarters and Region 9 offices. On May 18, 2026, Plaintiffs submitted a FOIA request to USDA's Office of Information Affairs.

38. All of these requests sought records including but not limited to communications and environmental review documents prepared by any applicants pursuant to the agencies' revised National Environmental Policy Act ("NEPA") regulations, concerning potential mining projects in the Superior National Forest following the purported reopening of lands to mineral exploration, leasing, and development.

### I. PLAINTIFFS' FOIA REQUEST TO INTERIOR'S OFFICE OF THE SECRETARY

39. On April 24, 2026, Plaintiffs submitted their FOIA request to Interior's Office of the Secretary through the agency's online FOIA submission page. A true and correct copy of the request is attached as Exhibit A.

40. The next workday, Plaintiffs received correspondence from a FOIA Officer requesting clarification for the meaning of "third parties" as used in the request. Plaintiffs responded the same day and confirmed that "third parties" used in the FOIA request included entities outside Interior, such as private parties.

41. One week after submission, Plaintiffs received an Acknowledgement Letter showing that the request was assigned control number DOI-2026-005654. This letter indicated that the request was placed in the "Complex" processing track, meaning that it would take 21 to 60 workdays to process; however, there was no indication that a search had been conducted or

that responsive records would be disclosed. The letter also indicated that Plaintiffs' request for a fee waiver had been granted.

42. On September 9, 2026—*94* workdays after submitting the FOIA request—Plaintiffs received an email in response to their request for an update. The email indicated that a search had been conducted but did not provide further information about the results and stated only that the estimated date for completion of the FOIA request was projected to be February 15, 2027, which would constitute a response time of 198 workdays.

43. To date, Interior's Office of the Secretary has not disclosed any records or issued a Final Determination in response to Plaintiffs' FOIA request.

## II. PLAINTIFFS' FOIA REQUESTS TO BLM HEADQUARTERS AND EASTERN STATES STATE OFFICE AND SUBSEQUENT APPEALS

### A. Request to BLM Headquarters

44. On April 24, 2026, Plaintiffs submitted their FOIA request to BLM Headquarters through Interior's online FOIA submission page. A true and correct copy of the request is attached as Exhibit B.

45. That same day, Plaintiffs received an email that confirmed their request was received by Interior's FOIA Office and assigned control number DOI-2026-005652.

46. Two workdays later on April 28, 2026, Plaintiffs received an unsigned email indicating that the FOIA request was received by Headquarters that day and was classified as an "other" request, and that it was placed on the "Complex" track for processing within 21 to 60 workdays.

47. On May 18, 2026, Plaintiffs received an unsigned email from a "no reply" email address with the subject line "Final Response." The email stated:

> Please find attached the final response letter for FOIA request DOI-2026-005652. Since the effective date of Public Land Order 7917 on January 31, 2023—which is

> earlier than the search period for this request—the BLM has not taken any minerals-related actions within the withdrawn area.

48. Although the email referenced an attached final response letter, there was no attachment. On the same date, Plaintiffs responded to the email and requested that a FOIA officer reply with the referenced final response letter.

49. On May 19, 2026, Plaintiffs received an email signed by "DOI FOIA Office" stating that the matter was closed.

50. On May 21, 2026, Plaintiffs responded by email, as well as through a message in the DOI Public Access Link, that the matter had been closed with a pending question and requested that a FOIA Officer reach out by email or phone to discuss the final response and closure of the request.

51. The next day on May 22, 2026, Plaintiffs received an unsigned email stating that:

> The attachment usually consists of the formal final response letter, which summarizes our findings and provides relevant information. It also explains the requester's rights to seek mediation from the Public Liaison and the Office of Government Information Services if they wish to appeal our decision. Once the letter is signed by the Deputy State Director or Associate State Director, it will be emailed to the requester. Currently, the letter is being routed for review, approval, and signature.

52. On June 16, 2026—*36* workdays after submitting the FOIA request—Plaintiffs received an email with an attached final response letter. The letter indicated that Plaintiffs had satisfactorily shown their FOIA request was in the public interest and granted their request for a fee waiver. In other respects, the final response letter mirrored the final response email and again stated that "the BLM has not taken any minerals-related actions within the withdrawn area."

53. BLM Headquarters never disclosed any records in response to Plaintiffs' request.

**B. Request to BLM's Eastern States State Office**

54. On April 24, 2026, Plaintiffs submitted their FOIA request to BLM's Eastern States State Office through Interior's online FOIA submission page. A true and correct copy of the request is attached as Exhibit C.

55. That same day, Plaintiffs received an email that confirmed their request was received by Interior's FOIA Office and assigned control number DOI-2026-005651.

56. In a deviation from BLM Headquarters' response, detailed above, Plaintiffs did not receive an acknowledgement letter that assigned a classification or placed the request on any specific processing track.

57. Rather, on May 18, 2026, Plaintiffs received an unsigned email from a "no reply" email address with the subject line "Final Response" that indicated, mirroring the language detailed above, that BLM had not taken any minerals-related actions within the withdrawn area. And although the email referenced an attached final response letter, there was no attachment.

58. On the same date, Plaintiffs responded to the email and requested that a FOIA officer reply with the referenced final response letter.

59. On May 19, 2026, an email was received signed by "DOI FOIA Office" stating that the matter was closed.

60. On May 21, 2026, Plaintiffs responded by email, as well as through a message in Interior's Public Access Link, that the matter had been closed with a pending question and requested that a FOIA Officer reach out by email or phone to discuss the final response and closure of the request.

61. The next day on May 22, 2026, Plaintiffs received an unsigned email that indicated that the final response letter was still being routed for review, approval, and signature.

62. On June 16, 2026—*36* workdays after submitting the FOIA request—Plaintiffs received an email with an attached final response letter. The letter indicated that Plaintiffs had satisfactorily shown their FOIA request was in the public interest and granted their request for a fee waiver. Again, the final response letter parroted the same language that "the BLM has not taken any minerals-related actions within the withdrawn area."

63. BLM Eastern States State Office never disclosed any records in response to Plaintiffs' request.

**C. FOIA Appeals**

64. On July 23, 2026, Plaintiffs timely made two separate appeals of these determinations to Interior's FOIA Appeals Office pursuant to 5 U.S.C. § 552(a)(6)(A)(ii) and the Department of the Interior FOIA regulations at 43 C.F.R. Part 2 *et seq*.

65. A true and correct copy of Plaintiffs' appeal letter to BLM Headquarters is attached as Exhibit D. A true and correct copy of Plaintiffs' appeal letter to BLM's Eastern States State Office is attached as Exhibit E.

66. Plaintiffs appealed on the basis that Interior's closure of the requests violated statutory and regulatory requirements for agency responses to FOIA requests. The unsigned emails entitled "Final Response" and the subsequent closure emails lacked all statutorily required information. The final response letters received a month later failed to include information relating to the right to appeal.

67. Further, the stated reason for closing the requests—that BLM has not taken "minerals-related actions within the withdrawn area" since 2023—suggests that the agencies failed to conduct a reasonable search for records responsive to the FOIA request.

68. Among other things, BLM appears to have unreasonably interpreted the word "action," as used in the FOIA requests, as limiting the scope of the request to "final agency

actions," as that term is used in the Administrative Procedure Act, 5 U.S.C. § 704. However, the FOIA requests broadly defined "record" and sought communications with external parties and NEPA-related documents. Moreover, BLM's responses did not indicate whether any responsive records existed and were being withheld; the emails stated only that no actions were taken.

69. Further, the assertion that "no actions were taken" since 2023 is contradicted by publicly available information. *See, e.g.*, Exhibit D at 4–5. Additionally, a Forest Service email produced in response to another FOIA request (not at issue in this lawsuit) stated that Forest Service employees "spoke with BLM" on or around March 5, 2025, and

> [t]hey were interested in the Forest Service stance on the revocation for Twin Metals. This is something that hadn't been done before so they are reviewing process internally within the agency. There is an EO associated with Unleashing American Energy. Recently the BLM has released a Secretary Order aligning with this. It was shared that BLM is working with their Solicitors and Washington Office on what a revocation would mean. Basically Next steps. They are looking at a CE, NOI FRN for an EIS, reissuance of leases that were revoked in 2021 as well.

A true and correct copy of the email is attached as Exhibit F.

70. Interior did not acknowledge or respond to Plaintiffs' appeals of the BLM FOIA requests in any way, let alone communicate a determination on those appeals in a timely manner.

## III. PLAINTIFFS' FOIA REQUESTS TO FOREST SERVICE HEADQUARTERS AND REGION 9

### A. Request to Forest Service Headquarters

71. On April 24, 2026, Plaintiffs submitted their FOIA request to Forest Service Headquarters through USDA's online FOIA submission page. A true and correct copy of the request is attached as Exhibit G.

72. The next workday, Plaintiffs received an email that confirmed their request was received by Forest Service Headquarters and assigned tracking number 2026-FS-WO-04255-F.

73. Separately on that same day, Plaintiffs received an email with the subject "FOIA Acknowledgment" indicating that "every attempt will be made to respond to [the] request within 20 working days." No mention was made of Plaintiffs' fee waiver request.

74. To date, Forest Service Headquarters has not disclosed any records or issued a Final Determination in response to Plaintiffs' FOIA request.

### B. Request to Forest Service Region 9

75. On April 24, 2026, Plaintiffs submitted their FOIA request to Forest Service Region 9 through USDA's online FOIA submission page. A true and correct copy of the request is attached as Exhibit H.

76. Eight workdays later, on May 6, 2026, Plaintiffs received an email that confirmed their request was received by the USDA FOIA Center and assigned tracking number FS-R9-04474-F.

77. The next workday, Plaintiffs received an Acknowledgement Letter indicating that Plaintiffs' request for a fee waiver remained under consideration.

78. To date, Forest Service Region 9 has not disclosed any records or issued a Final Determination in response to Plaintiffs' FOIA request.

## IV. PLAINTIFFS' FOIA REQUESTS TO USDA'S OFFICE OF INFORMATION AFFAIRS

79. On May 18, 2026, Plaintiffs submitted their FOIA request to USDA's Office of Information Affairs through USDA's online FOIA submission page. A true and correct copy of the request is attached as Exhibit I.

80. The same day, Plaintiffs received an email that confirmed their request was received and assigned tracking number 2026-OSEC-04660.

81. Ten workdays later, on June 2, 2026, Plaintiffs received an email acknowledging the FOIA request, invoking the ten-day "unusual circumstances" extension in 5 U.S.C. § 552(a)(6)(B), and predicting a delay in responding. The email further indicated that Plaintiffs' fee waiver request was under consideration.

82. That same day, following a phone call inquiry from a FOIA officer, Plaintiffs confirmed that subparts 5, 6, and 7 of their request were subject to the search terms identified in the request and, further, that they were seeking the identified NEPA-related documents subject to those search terms.

83. To date, USDA's Office of Information Affairs has not disclosed any records or issued a Final Determination in response to Plaintiffs' FOIA request.

## CLAIMS FOR RELIEF

### Count I: Violation of 5 U.S.C. § 552
### Failure to Provide Records in Violation of FOIA Against Interior

84. The above paragraphs are incorporated by reference.

85. Plaintiffs' FOIA request to Interior's Office of the Secretary sought the disclosure of agency records and was properly made.

86. Included in the scope of Plaintiffs' request were one or more records or portions of records that are not exempt under FOIA.

87. Defendant Interior failed to timely issue a Final Determination of Plaintiffs' FOIA request and failed to release all non-exempt records, in violation of its statutory duty. 5 U.S.C. § 552(a)(3)(A), (a)(6)(A)(i), (a)(6)(B).

88. Defendant Interior has wrongfully withheld the requested records from Plaintiffs.

89. Plaintiffs have exhausted applicable administrative remedies.

90. Plaintiffs are entitled to obtain the requested records immediately and at no cost.

**Count II: Violation of 5 U.S.C. § 552**
**Failure to Provide Records in Violation of FOIA Against BLM**

91. The above paragraphs are incorporated by reference.

92. Plaintiffs' FOIA requests to BLM Headquarters and Eastern States State Office sought the disclosure of agency records and were properly made.

93. FOIA requires that after an agency makes a determination, it shall

> immediately notify the person making such request of—(I) such determination and the reasons therefor; (II) the right of such person to seek assistance from the FOIA Public Liaison of the agency; and (III) in the case of adverse determination—(aa) the right of such person to appeal . . . [and] to seek dispute resolution services from the FOIA Public Liaison . . . .

5 U.S.C. § 552(a)(6)(A)(i); *see also* 43 C.F.R. § 2.24.

94. The unsigned emails from BLM entitled "Final Response" and the subsequent closure emails from BLM Headquarters and Eastern States State Office lacked all statutorily required information.

95. The final response letter received a month after the final response email failed to include information relating to Plaintiffs' right to appeal.

96. The decision to close Plaintiffs' FOIA requests on the basis that BLM had not taken "minerals-related actions within the withdrawn area" inserted an unreasonable definition of the word "action" into the requests and ignored Plaintiffs' descriptions of records sought (including correspondence and NEPA-related documents), as well as the stated parameters of the requests.

97. The decision to close Plaintiffs' FOIA requests on the basis that BLM had not taken "minerals-related actions within the withdrawn area" since 2023 also ignored publicly available information that contradicts BLM's position.

98. Defendant BLM's final response letter failed to indicate whether a search was conducted, and if so, whether any responsive records were withheld.

99. Upon information and belief, Defendant BLM failed to conduct a reasonable and adequate search under FOIA for documents requested by Plaintiffs in violation of its statutory duty. 5 U.S.C. § 552(a)(3)(C).

100. Defendant BLM failed to timely issue a Final Determination of Plaintiffs' FOIA requests and failed to release all non-exempt records in violation of its statutory duty. *Id.* § 552(a)(3)(A), (a)(6)(A)(i), (a)(6)(B).

101. The final responses and closure of Plaintiffs' FOIA requests were further unlawful because they failed to include information required by statute. *Id.* § 552(a)(6)(A)(i).

102. Defendant BLM has wrongfully withheld the requested records from Plaintiffs.

103. Plaintiffs have exhausted applicable administrative remedies.

104. Plaintiffs are entitled to obtain the requested records immediately and at no cost.

**Claim III: Violation of 5 U.S.C. § 552**
**Failure to Provide Records in Violation of FOIA Against the Forest Service**

105. The above paragraphs are incorporated by reference.

106. Plaintiffs' FOIA requests to the Forest Service's Headquarters and Region 9 office sought the disclosure of agency records and were properly made.

107. Included in the scope of Plaintiffs' requests were one or more records or portions of records that are not exempt under FOIA.

108. Defendant Forest Service failed to timely issue a Final Determination of Plaintiffs' FOIA request and failed to release all non-exempt records, in violation of its statutory duty. 5 U.S.C. § 552(a)(3)(A), (a)(6)(A)(i), (a)(6)(B).

109. Defendant Forest Service has wrongfully withheld the requested records from Plaintiffs.

110. Plaintiffs have exhausted applicable administrative remedies.

111. Plaintiffs are entitled to obtain the requested records immediately and at no cost.

**Count IV: Violation of 5 U.S.C. § 552**
**Failure to Provide Records in Violation of FOIA Against USDA**

112. The above paragraphs are incorporated by reference.

113. Plaintiffs' FOIA request to USDA's Office of Information Affairs sought the disclosure of agency records and was properly made.

114. Included in the scope of Plaintiffs' request were one or more records or portions of records that are not exempt under FOIA.

115. Defendant USDA failed to timely issue a Final Determination of Plaintiffs' FOIA request and failed to release all non-exempt records, in violation of its statutory duty. 5 U.S.C. § 552(a)(3)(A), (a)(6)(A)(i), (a)(6)(B).

116. Defendant USDA has wrongfully withheld the requested records from Plaintiffs.

117. Plaintiffs have exhausted applicable administrative remedies.

118. Plaintiffs are entitled to obtain the requested records immediately and at no cost.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully requests that this Court:

i. Declare that Defendants' withholding of non-exempt records violates FOIA;

ii. Order Defendants to conduct a reasonable search for records and produce all requested records no more than 20 working days from the date of the court order and at no cost;

iii. Award Plaintiffs attorneys' fees and costs; and

iv. Award such other relief that the Court considers appropriate.

Dated: October 22, 2026

Respectfully submitted,

s/ Janette K. Brimmer
Bar No. 174762
*Attorneys for Plaintiffs*

Janette K. Brimmer
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
Tel: (206) 504-3459
Fax: (415) 217-2040
jbrimmer@earthjustice.org

Julie Goodwin
(*pro hac vice forthcoming*)
Thomas Cmar
(*pro hac vice forthcoming*)
Adam Ratchenski
(*pending admission*)
EARTHJUSTICE
311 S. Wacker Drive, Suite 1400
Chicago, IL 60606
Tel: (312) 500-2200
Fax: (312) 667-8961
jgoodwin@earthjustice.org
tcmar@earthjustice.org
aratchenski@earthjustice.org